In this case, one of the most glaring examples of the issues before this Court that needs to be addressed is the inconsistency in the order between what is a pre-deprivation hearing and what is an interactive process. And one of the most interesting items in the evidence is the interactive process argument, which was rather heated, as the Court's probably observed from reading Docket Entry 165. At that time, the officer in this case was facing termination of employment, as that is defined both under California law and constitutional law. He was about to lose a protective property interest in his employment. In fact, we went to the bother of having an ALJ decide that the only issue that the city had decided was that he qualified himself as disabled within the meaning of the DFEH, or the Fair Employment and Housing Act, and the Americans with Disabilities Act. He was whether or not there had been reasonable accommodation. More importantly, 3304B of the California Government Code requires an administrative appeal consistent with Skelly v. State Personnel Board at 15 Cal 3rd, page 215, all due process requirements set forth, and the Cal Supreme Court was very clear on that. And the California Supreme Court has upheld, and the FEDSUP decision of Barbaric has upheld, the right to an administrative appeal on the taking of a property right and the substitution of a retirement in lieu thereof, which the employee has the right to request, but he also has, and by the doctrine of preemption, federal law superseding, the right to ask for accommodation. The accommodation issue here was addressed on December 8, if you believe it was also a pre-deprivation hearing. There was never a post-deprivation hearing, and the doctrine of Barbaric v. State Personnel Board implies, and has been upheld by the federal courts, not implies, commands, I should say, that back pay until the date of the post-deprivation hearing be granted. None of this has been dealt with. One of the reasons, of course, is there was no oral argument on summary judgment in this action. Failure under state law to grant it. What does interactive mean? Doesn't that mean that both sides participate? Yes, it does, Your Honor. And there was a meeting. The city wanted to have a meeting. There was no meeting. There was a, quote, skelly hearing, where the only opportunity under skelly or Loudermill or the Clevelandist doctrine is to tell the decision maker why he was making a mistake. And if you read the transcript... So the city did not request the employee to meet with representatives of the city to discuss accommodation? No. They requested he come in, and if you read the transcript, I asked, what are the rules here? There was a city process, 8.1, that outlines... Okay, so there was a, quote, meeting, a gathering, what would you call it? I call it a skelly hearing, as it's called in California, a pre-removal safeguard hearing. What did the city call it? They didn't. We asked them to define it, give us the rules. The city got everybody together somehow and just said, hey, everybody, let's get together on this day and do what? They said, unless you convince us, basically, if you read the evidentiary item, the letter saying come in, we are going to impose a disability retirement on you. Then when we come in, we have not got this, this, this, this. It's also supposed to be a mutual exchange of information. If you look at it... Was there an exchange? No. They did not give us the worker's comp files or other files. They say they were not available. They did not give us... Accommodation was obviously going to be an issue. Did Nowadney ever suggest an accommodation? Yes. He wanted more leave? No. He wanted to go back to work as a policeman. We wrote back, the letters in the evidentiary chain show as far back as May, a request for accommodation was made and refused in writing. Two separate occasions, the refusal was, it's premature and that is not the law. Once an employee asks for accommodation, he's entitled to it. What was the request for accommodation? He asked for an interactive meeting. They declined twice. They said, premature, we're going to wait until your peak. Permanent, stationary, can never have another change to accommodate you. The law in California and in the Ninth Circuit and the Supreme Court is that accommodation must be provided to disabled workers. He wanted to be accommodated by putting him in the detective position, right? The only position he knew he could do. The city did not offer it. They had already demoted him from detective to patrol officer, hadn't they? Oh, yes, they had. And they now lost the case under Grant, the Grant decision. When you abandon a case and you let the commission decide it and dismiss it, there is no mandate that will lie. You cannot have a remedial hearing because you prevailed. Now, wait a minute. Had they lost that case at the time he had this so-called accommodation hearing or meeting? No, it's pending. Okay. So he wanted to be promoted. He wanted to be promoted as an accommodation. No, he wanted to be returned to the duty assignment that he had. But he didn't have it then. Say again? His last job was not a detective. He was on the patrol. No. And that's where the retaliation issue comes in because when they put him in detectives or patrol for detectives, they knew he could not do that job. He told them he couldn't. It was part of the record. They were going to fire him, and that's also in the record. They gave him a notice of termination. They rescinded it. Gave him a 320-hour suspension, which he won on. Then He won because it wasn't pursued, right? He won because it was abandoned. Under California law, there is no remedy, and it is a decision that he prevailed. That's the Grant decision. The doctor in the Grant case, and I can give the court the site or the clerk, is very clear. He could not pursue a mandate after successfully having a case abandoned. When it was abandoned, that was the end. Did the city have some doctor's reports that said he could not do the work of a detective? They had some that said he could not perform. But as the Ninth Circuit said, you cannot blindly rely on a doctor's report. They did not have, and we asked in our so-called meeting, which is both a skelly and interactive, which are conflicting doctrines, we asked, have you done an evaluation? What have you done? And every time we do, we even ask, who's here? They wouldn't want to tell us that. They didn't want to tell us who's at this meeting. I finally turned the tape recorder on. I was very upset, but I did. I turned the recorder on, and it got hot. And in that hot meeting, they said a lot of things, and those things make a material issue of fact. A jury reading those documents could infer retaliation, bad motive. Two defendants were sitting in there in the ongoing federal case. They were smirking as if we got you now. My client was outraged. They did what they were going to do. This was pretextual, it was wrong, and it did not even comply with the ADA or California law, period. As to free speech, the same issues arise, except for two things. The Garcetti case has been reversed in some degrees. The Ninth Circuit's saying certain documents. The only decision relied on, on the one aspect, was Garcetti. The other aspect, the court, based on Florida, said that they weren't going to review it. I think those were errors. We've briefed those. But the bottom line here is, the animus becomes clear. Also, on the due process claim, the city would like to say, well, we win. Well, they lose, because in the collateral stockpile, they argue. Could you move in front of the mic? I'm sorry, Your Honor. Just stand in front of the mic. That's also a recording device, and sometimes we like to come back and listen to the argument to refresh ourselves, so just stick right there if you can. So, sorry to talk. The point is that in the Callister decision, he notes he will not rule on constitutional issues. But he also notes that the chief of police and the people in the process failed to give adequate notice of the charges against my client. And he reversed all the discipline, finding the testimony incredible, that a person said that he was in one place on one day when he was actually in another place, said, well, I guess I met approximately 1 o'clock when it was 4 or 5 hours later. There was a complete finding of fundamental unfairness in the decision in front of the trier of fact. That is enough evidence to show that there is a retaliatory motive and a due process violation. And the Kerry Doctrine is that if you have a procedural violation, you're entitled to nominal damages or punitive damages or such other damages as you suffer. And in Vennelli in the Ninth Circuit, Vennelli says a time between the pre-deprivation and post-deprivation is compensable as damages. Now, here we have a more unique situation. To this day, the post-deprivation hearing has never been provided for the termination of employment. And that is very clear. The Bagot Court and the California Supreme Court ruled on Judge Cooper's analysis that the last phrase, for purposes of punishment, does not apply to anything else except the transfer for the purposes of punishment. In California, it is a property interest defined by state law under the Roth Doctrine and the Sinnerman Doctrine and all subsequent doctrines that if an employee is losing a property interest defined by law, he is entitled to full due process on a post-deprivation basis. Now, one other thing. If you look at the worker's compensation application, the application says his situation is intermittent, not complete. He is not claiming total disability. He's claiming at that point when he first starts. I thought he got total disability. There's a difference under the law in California as to what worker's comp defines as a word of art and what a person under the ADA is. In California, total temporary disability or permanent and stationary are words of art. Only a California worker's comp court can adjudicate those issues. How many doctors did your client have that said he could do the work of a detective? We had, at the time, no sufficient medical evaluation to say whether he could or could not. That was the issue on December 8th. We were still awaiting the results of his surgery, the final diagnosis, and they were telling us we would get the materials. This is a key point. They said we would get the materials if the court looks at the record. Those representations never occurred. Later, Ms. Foster writes a letter saying we reviewed further materials without any further discussion with the individual, without telling us anything about it, and we've decided to involuntarily retire you, a.k.a. termination of employment or a protected property interest. That in and of itself is a constitutional violation because there's subsequent evidence that has now been discovered and brought to the decision maker. She claims to be the decision maker. He was never given an opportunity under Skelly or Loudermill for either informal pre-removal as to the new evidence or an interactive discussion based on it, and after the fact, he was let go. The ALJ decision, there is no decision they sustained below. They lost the ALJ because they withdraw it. The commission, not the matter, they overruled them. Thank you. I'll reserve my time if I may. Thank you for coming in. Thank you for your argument, counsel. Mr. Field? I may have pleased the Court. I'm Scott Field. I'm representing all the appellees today, all of Mr. Coble, who's representing the individual defendants, is also here this morning. I'd like to focus on perhaps one of the key issues of this case, which is the interaction between two sets of California laws, the state retirement laws for public employees and FIHA, the anti-discrimination law that applies to all public and private employers and employees. The gravamen of Mr. Coble's complaint is that he was retired under state retirement law against his will. Now, after the city retired the appellant pursuant to California Government Code Section 21-151, which provides any police officer who is incapacitated from the performance of his duty shall be retired, it also notified him that he could appeal that decision to a state administrative law judge. That's a proceeding that the city does not control. It's a separate proceeding run by the state. It's a full evidentiary proceeding. Did he do that? Yes, he did that, Your Honor. He did appeal that. Is there something wrong with that? Because it couldn't determine everything that's involved in this case. Let me get right to that point. That's a full evidentiary hearing. You would have expected that if he appealed that decision the city made to retire him, that he would present a case to the ALJ. In fact, in his appeal letter, it's in the record, it states that he's not just challenging whether or not he's quote-unquote disabled, but he's challenging the city's decision to unilaterally terminate his employment and force his disability retirement. That's at page 220 of the administrative record. I'm sorry, of the excerpt of record. Yet when he gets there, that's not what he does. He immediately stipulates that he's incapacitated from the performance of duty. Based upon that stipulation in part, the ALJ then found that he was quote, substantially incapacitated from performing the usual and customary duties of a police detective. I want to emphasize that word substantially, because in the Mansberger case, which is a state case that interprets this state retirement law, it was facing a very similar issue. In Mansberger, the case involved a game warden who could perform the essential duties of the job, even though he admitted he had to perform them with restrictions, that he could not arrest or take away a prisoner. But the court held that in that proceeding concerning a game warden, that was not one of his customary or usual duties. And consequently, he was not substantially disabled and incapacitated from performing his duty. That's the same issue in this case. If Mr. Nowotny contended that he could still perform the duties of a detective, even with some accommodation, he could have made that argument to the ALJ. He didn't. And then, when he didn't make that argument, he still could have brought a writ in California's Superior Court and tried to challenge what the ALJ found. When did this hearing, the ALJ hearing, occur? That was in 2000, Your Honor. Okay. Was that before or after this accommodation meeting that? Oh, that would be after, because first we have the accommodation meeting, all right? The city makes a decision. The notice went out on the accommodation meeting in October of 1999. Two months later, the accommodation meeting was held. Now, at the accommodation notice in October, and the record's very clear, there is references made that the city is aware of the fact that he had had some additional medical procedures recently. And the city asked about what those procedures were. He didn't present any evidence at the interactive meeting as to what those procedures were and whether or not they changed the prognosis. Now, those procedures were as to his knee, but his own treating physicians had already indicated that he had a knee condition that required knee replacement. Another of his condition that prevented him from working in any capacity. Was this from his doctor's reports or your doctor's? Yes, they were, Your Honor. Those were from both of his doctor's reports. And those reports never changed. Now, in the Allen case, this Court held that when, in a circumstance like this concerning accommodation, when the employer has evidence that indicates that the worker cannot work in any manner, it's up to the employee at that point to provide some other contrary evidence. Mr. Nowotny didn't. In the Jensen case, which is a state FIHA case, one moment here, the Court held the same rule, that it's the employee's responsibility to understand his own medical condition well enough to present the employer with some sort of contrary evidence. He didn't do those things. He didn't do those things at the interactive meeting. He didn't do those things in front of the ALJ. Now, that gets me back to, well, what does that mean in terms of FIHA? It means two things. In the Johnson case, the California Supreme Court explained that you don't get two procedural bites at the apple. If you choose to go the administrative route, which is what Mr. Nowotny did by going to the ALJ, he has to proceed, and if he receives an adverse determination, he has to seek judicial review through a writ of mandate. He didn't do that. Now, in the Schifando case, which is a follow-up to Johnson, the California Supreme Court explained that he had the option. He could have just gone straight under FIHA, but once he starts that administrative procedure, he has to complete it, and the reason is simple. Otherwise, you'd have two inconsistent results. Under state retirement law, he must be retired. Once he made that stipulation that he was substantially incapacitated from performing his duty, state law required, mandated, that he be retired. The state law required he be given any kind of accommodation, or is that just through the federal law? Keep in mind, on the fee, there is no federal claim. There is no federal ADA claim in this case. Oh, okay. All right. All there is is a state FIHA case, a FIHA claim, and the state law requires that he be retired. And, in fact, under Does it require? Does it require that he be accommodated? Well, what it requires, it imposes a similar inquiry because it's not enough to retire somebody just because they have a disability. They have to be substantially incapacitated from performing their usual and customary duties. It's our position, and I think the case law supports this clearly on this, that usual and customary duties is the same test that we follow under FIHA of essential duties of the job. And that's, again, what the Mansberger case explains, that if somebody can perform their usual and customary duties, then you don't retire them, even if they have some disability. And keep in mind, here in this case, the only thing he wanted was to be returned to work as a detective. But, as we pointed out, not only did his doctors indicate in written reports that he could not perform the job of a detective, in fact, his back doctor indicated he couldn't perform any work. But a couple of months before the interactive hearing, he testified at his workers' comp proceeding that he could not perform the essential functions of the job of a detective, that he could not go back to work. I guess if he said he could go back to work, he wouldn't have gotten workers' comp, right? That's right, Your Honor. Let me see here. I lost my point. One moment. Was there a psychiatric report in this file also? Yes, there also was a psychiatric report, and that psychiatric report indicated that he was incapacitated from performing work. And, in fact, we have never received any report to the contrary. That condition had never changed throughout the interactive procedure. And I think that was a very important point to Judge Cooper. She pointed out that the only evidence that had been presented at the interactive proceeding concerned some palliative measures taken for his knee. It never indicated that it resolved the problem or would allow him to work. But not only did Mr. Nuwati have the knee problem, but it also indicated that he could not perform work, but he had the back problem and he had the psychiatric problem, which all contributed to the fact that he could not return to work as a detective. Who employed this psychiatrist? Was that his or? That was Mr. Nuwati. That was Mr. Nuwati. That was his own psychiatrist. Let me just close with a couple of comments in response to some things Mr. Peterson indicated. There's a suggestion that Mr. Nuwati has never received a post-deprivation due process hearing. Clearly he did. The ALJ proceeding was that post-deprivation hearing that met all the requirements of due process. That was a full evidentiary hearing. He could have presented evidence. Now, the fact of the matter is he chose not to. He chose to stipulate that he needed to be retired. Now, once he made that stipulation, once the ALJ ordered him to be retired, that is the same action that he is now complaining about. He can't. And the effect of that is to create a collateral estoppel here. In the Miller court, the Ninth Circuit held that when you look at collateral estoppel, you look at the primary right involved. Miller noted, and it's the same case here, that the primary right involved in this case is continued employment. The reason why he was separated from continued employment was the ALJ decision. That decision cannot be changed. You can't now go back and pursue a FEHA claim or a retaliation claim under the First Amendment and complain about the same adverse action that is already final and which has already been held to be in place, can't be changed, can't be challenged. He couldn't obtain back pay, can't obtain reinstatement under any other theories so long as that ALJ decision is final, and it is the ALJ decision. If there's any other questions, I'll submit. Roberts. I don't see any. Thank you for your argument. Counsel Rebuttal? Rebuttal. Let me just ask the Court to take a look at 269 in the record, which is the ALJ's decision. The second page, this would be in the volume one of two excerpts of a record from the appellant. The second page is 269. At the bottom of the page just above legal conclusions, it says, during the testimony of the petitioner's agency expert, both counsel entered into a stipulation that the respondent was permanently disabled and incapacitated due to his medical-slash-physical condition. We have no problem with that. We wanted that ruling. Otherwise, he would not be qualified for the benefits of accommodation. However, here's where the entire defense fails, and the core of their entire argument on all the issues. Both counsel and the administrative law judge also agreed, that's both counsel, myself and opposing counsel, agreed that the issue of, quote, reasonable accommodation was not within the jurisdiction of this tribunal. The Miller case is an interesting case, but like Elric and the others, it only applies if the tribunal below had jurisdiction. The jurisdiction also here, I'm sorry, I'm getting better. The jurisdiction here is also very clear that only the personnel commission of a charter city can terminate his employment, and only after a 3304B hearing. That's point one. Point two, at the so-called Skelly or Interactive December 8th meeting, only after a 3304B hearing, they were asking us to give them evidence. The dark decision out of the Ninth Circuit absolutely refutes that whole mentality. His claim, therefore, that they've given a post-deprivation hearing, while you don't have any record for you other than the adjudication, if you look at the statutory authority, which they have not and do not want you to look at. They want you to believe this was a hearing on discipline and termination within the meaning of the act, within the meaning of the civil service rules. The Civil Service Commission has the only jurisdiction on that. The only jurisdiction that the ALJ had was to determine if my client qualified for a retirement. Not even that he had to take it. Not even that. Only that he qualified. Once I got that decision nailed down, I had to take it. I moved forward. I went to federal court because they weren't giving him a due process post-deprivation hearing that Barberick discusses and the California courts discuss. And Barberick has not been distinguished since its publication. It is clear. It is a taking of a property interest. Now, the argument is that I could have made the argument. Well, I couldn't have to a court without jurisdiction. It would sort of be like coming to the United States District Court with a slip-and-fall case. Absent some federalization, it's a state court. It is a case with no jurisdiction. It would be a void judgment. Now, the full evidentiary hearing that's required also requires that they give the materials. They didn't. But what does the interactive process require? It says, and I think the case very clearly, is Dark v. Curry County 45152-178-184. The ALJ had no authority over the issue of accommodation. In that case, the court found the ADA outlaws adverse employment decisions motivated even in part by animus based on a plaintiff's disability or request for a accommodation. It goes on and says, and I think it's important, there is an affirmative obligation to engage in the interactive process. In the evidence before this tribunal, you'll not see any evidence that they had this meaningful exchange of materials, a meaningful discussion. Nobody ever sat down and said, look, Mr. Nowotny, this is what we think. What do you think? There was no interactive. It was come in and give us a reason we shouldn't. That's a skelly. They didn't give us the materials. Even when we asked for them in the hearing, they said no. Can't have them. So without the worker's comp record, can't do anything. He also says in his argument, Mr. Fields, that, well, we did not provide the employer with the medical records. Two things need to be recognized. First, the employer was not providing the employee with the cost of medical records. They got the medical records. By worker's comp law, they were required to get them. And they had them. What they didn't do was share them with the employee who is out of work, has no money, and cannot afford to do much. If Ringo is in the record, they talk about bad time. He's on bad time. What that means is they terminated him even before they had meeting. They're not allowed to even retire him before an interactive process. And if you look at the record, they did. They forced retirement. We wrote a letter. They rescinded. And then they had a pretextual meeting claiming, as the documents show, that they had accommodated him. Thank you.
judges: T.G. Nelson, Siler, Hawkins